## J. D. BRALEY v. OLIVER LANGLEY.

1. POSSESSION *of Assignee of Land Contract, No Contest of, by Whom.* Where a railroad company sells land, executes to the purchaser a title bond or land contract therefor, receives a part of the purchase-money, puts the purchaser in possession, and thereafter the purchaser assigns and transfers the title bond or land contract to a third party, who takes possession of the land under the contract with the consent of the railroad company, neither the railroad company nor its grantee can thereafter contest the possession of such third party upon the ground that the wife of the original purchaser did not join in the assignment to him of the land contract.

2. SECOND TRIAL *Under ¿ 599 of Code; No Error.* In an action for the recovery of real property one trial was had, and upon a demand for another or second trial under the terms of ¿ 599 of the code, the judgment was vacated, and the action set for trial at the next term. Thereafter the petition and answer were amended. Another trial was had, and judgment rendered for the defendant. Without any notice on the journal of the demand of a second trial, plaintiff complains that the court erred in not vacating the judgment and granting a second trial upon the issues joined upon the amended pleadings. *Held,* As there is nothing in the record to show that a second trial was demanded after the amendments to the pleadings, the question attempted to be raised is not properly be-

fore us for adjudication, and from the record no error appears in tha regard.

3. TIME *of the Essence of Land Contract; Waiver.* Where a party with the express stipulation of the original owner and holder of the legal title of land, enters into the possession thereof under a title bond or land con- tract assigned to him by the purchaser, in which the time of payments is of the very essence of the contract, and some of the payments therein provided for have not been made at the time specified, and such party expends large sums of money in making lasting and valuable improve- ments on the land upon an agreement with the original land-owner to waive the forfeiture and postpone the over-due payments to a future day, the holder of the legal title cannot forfeit and cancel the contract on account of the non-compliance with the terms of payment therein named, regardless of the subsequent agreement and conduct of the par- ties.

4. EQUITABLE MORTGAGEE, *Taxes Paid by, and Balance of Purchase-Money, a Lien on Land.* Where a party sells land, executes to the purchaser a title bond or land contract, thereafter receives a part of the purchase- money and puts the purchaser in possession, he is an equitable mort- gagee; and if the purchaser or his assignee fails or neglects to pay the taxes as such equitable mortgagee, he may pay them or redeem the land when sold for taxes; and the balance of the purchase-money, together with the taxes so paid, with the interest thereon, will be a lien on the land until the same be paid.

## Error from Crawford District Court.

ACTION in the nature of ejectment, brought by *Braley* against *Langley,* to recover the possession of certain land in Craw- ford county. Trial at the January Term, 1882, of the dis- trict court, and judgment for defendant. *Braley* brings the case to this court. The facts appear in the opinion.

*Pursel & Wood,* for plaintiff in error.

*W. R. Cowley,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the nature of eject- ment, brought by plaintiff in error against the defendant in error, to recover possession of a fractional quarter of land, situate in Crawford county. The plaintiff claimed the legal title and the right of possession by virtue of a deed of gen- eral warranty, executed by the Kansas City, Fort Scott &

Gulf railway company, on April 26, 1880. The defendant claimed that he had an equitable title to the land and was in the actual possession thereof, by virtue of two certain written contracts, executed by the Missouri River, Fort Scott & Gulf railroad company to one F. M. Chambers, on May 3, 1875, which contracts defendant claimed were assigned and transferred to him on August 19, 1878. In this case the record numbers 202 pages of manuscript, and the brief presented by plaintiff in error consists of fourteen pages of manuscript, alleging a large number of supposed errors on the part of the trial court. Counsel filing the brief for plaintiff in error have failed to refer specifically to the pages of the record as required by the rules of this court. There is only one reference in their brief to any page of the record, and this reference is merely to the testimony of one witness, although it is apparent that other witnesses testified the same way upon the same subject. Considering the length of the record and the number of errors alleged, this failure of counsel to comply with the rules of this court would be a sufficient reason for a refusal to consider the questions presented, and indeed such was our inclination at first as to the disposition of this case. We have, however, concluded in this instance, notwithstanding the violation of our rules, to pass upon some of the more important questions.

I. It is urged that the court erred in giving the defendant judgment for the possession of the land in controversy, because it is claimed there was no valid assignments of the land contracts to the defendant, in this, that the wife of F. M. Chambers and the husband of Electa J. Chambers did not join in the assignments; and further, that these contracts are void, because they were not recorded. Neither of these objections has any force whatever. The assignment of the land contracts from F. M. Chambers to Electa J. Chambers was made and acknowledged the 25th day of September, 1876, and the assignment from Electa J. Chambers to the defendant was made August 19, 1878, and acknowledged October 2, 1878. The defendant accepted the land contracts and the assignments

thereof, and thereunder took actual possession of the premises, and made lasting and valuable improvements thereon. Thereafter, he had exclusive, open and notorious possession of the land, and the plaintiff and all other persons were bound to take notice of all the equitable interests which the defendant had therein. Neither the wife of F. M. Chambers nor the husband of Electa J. Chambers contests the possession of defendant, nor does plaintiff claim any title, interest, or possession under them or either of them, and therefore the matter of the non-joinder of the wife of F. M. Chambers and the husband of Electa J. Chambers in the assignments, and the failure to record the land contracts, are not important, and in no way affect the equitable rights of the defendant.

II. The claim is made that the court erred in not granting on demand a second trial. It appears that the first trial was had at the September term of the district court for 1880, and on the 16th day of October; that on the 20th day of April, 1881, plaintiff filed an amended petition, and on May 11, 1881, defendant filed his second amended answer. The second trial was had January 4, 1882, at the January term of the court for that year. It does not appear that the plaintiff demanded another or second trial under the terms of § 599 of the code after the amendment of the pleadings, and the question is not properly before us for our adjudication whether plaintiff was entitled to two trials after the petition and answer had been amended.

III. As it is admitted that the land in controversy originally belonged to the Missouri River, Fort Scott & Gulf railroad company, and as the Kansas City, Fort Scott & Gulf railway company derived its title from the former company, and was possessed of the legal title upon the date it executed the deed to the plaintiff, the material question before the trial court was, whether the land contracts under which defendant claimed were subsisting and in force at the time plaintiff obtained his title, notwithstanding the non-payment of the interest, taxes and other sums as therein specifically provided. These contracts were prior to the con-

veyance to the Kansas City, Fort Scott & Gulf railway com-
pany; but plaintiff claims that they were forfeited and
canceled April 24, 1880 — prior to the date of his deed. On
the part of the defendant, it is contended that he took the
assignment of the land contracts with the consent of the
Missouri River, Fort Scott & Gulf railroad company, and
through its land commissioner, John A. Clark; that at the
time of obtaining the land contracts, Clark extended the time
of the payments thereon; that he went into possession of the
land upon that condition, made extensive and valuable im-
provements, and that all defaults in the terms of the con-
tracts were expressly waived. Upon these questions a large
amount of evidence was introduced, some of which was con-
flicting. The court instructed the jury upon all the ques-
tions of law involved, and no exceptions were taken. The
jury found a verdict for the defendant, and thereby substan-
tially found that at the time the defendant obtained the con-
tracts it was agreed and understood by the railway company
that he should have until the spring of 1880 to make pay-
ment, and no forfeiture or advantage would be taken under
the clauses of forfeiture in the contracts. As there was suf-
ficient evidence to sustain the verdict, the court did not err
in deciding thereon that plaintiff was not entitled to recover,
if the defendant paid to him all the money due upon the con-
tracts.

While parties have the right to make their contracts as
stringent as they please, and to make time of payment of the
very essence thereof, yet no forfeiture or advantage can be
taken of a defaulting party where there has been an express
waiver of the default, and an extension of time therefor
agreed upon, and the party is in a condition to make payment
in accordance with such subsequent agreement. And it is
equally clear, that where a party with the express stipulation
of the land-owner enters into possession thereof under the
assignment of a contract of sale where time is of the very
essence, and some of the payments therein provided for have
not been made, and upon an agreement with such owner that

the over-due payments are to be postponed to a future day, expends large sums of money in making lasting and valuable improvements thereon, the owner cannot forfeit and cancel the contract on account of the non-compliance with the exact terms of the original contract, regardless of the subsequent agreement of the parties. (*Missouri River, Fort Scott & Gulf Railroad Co. v. Brickley*, 21 Kas. 275.)

IV. After the jury returned a verdict in favor of the defendant, virtually deciding that as the equitable owner of the premises he was entitled to the possession thereof, the court proceeded to determine the money due to the plaintiff upon the land contracts, and adjudged that the defendant pay to the clerk of the court below for the benefit of the plaintiff, the sum of $1,240.24, within sixty days from the rendition of the judgment. No objection seems to have been taken to this proceeding, except it is alleged that the amount due plaintiff is $1,440.89, in the place of $1,240.24. While the plaintiff has the legal title of the premises, and by the judgment of the district court holds such legal title in trust for the defendant, he is in fact an equitable mortgagee, and has a lien thereby for his security for the unpaid purchase-money. In addition to this, as he stands in the shoes of the railroad company executing the land contracts, he is also entitled to have repaid to him all the taxes paid on the land by the company after the execution of the contracts, together with lawful interest thereon, and also the taxes paid by himself, with interest. We have made a calculation of the amount of these various sums, but our estimate does not exceed the $1,240.24 ordered to be paid by the court below. In the calculation furnished by counsel of plaintiff in error, some accounts are entered which do not appear in the evidence, and no deduction is made in such estimate for the moneys paid by the defendant to Perry, and by Perry turned over to Clark. Therefore we do not perceive that the amount of the lien of plaintiff, as found by the court, is erroneous.

The judgment of the district court will be affirmed.

All the Justices concurring.