SVABODA *v.* CHENEY.

DAMON *v.* CHENEY.

*(Circuit Court, D. Nebraska.   August 27, 1886.)*

SPECIFIC PERFORMANCE — FORFEITURE OF REAL-ESTATE CONTRACT — PROMPT PAYMENT—PROMISSORY NOTES.

Where it was stipulated in a contract for the conveyance of real estate that annual payments were to be made by certain promissory notes at a given time and place, and, in case the payment was not made punctually, the contract should be void, and all rights previously acquired cease, *held,* in an action to compel the specific performance of the contract, that where one of the said notes was not paid on the exact day due, it would not work a forfeiture of the contract; the evidence showing that the maker of the note had previously called at the place agreed upon for the purpose of paying, but had not found the notes there, and that former payment of other notes had been accepted a few days after they became due, and also that the payee retained possession for nearly a year after the alleged forfeiture of all the negotiable notes given for future payments.

In Equity.

*T. Appelgate & Son,* for complainant.

*J. L. Webster,* for defendant.

BREWER, J.   This is an action by plaintiff to compel the specific performance of a contract for the conveyance of real estate.   The material parts of the contract are as follows:

"The sum agreed upon for the possession, use, occupancy, and control of said land is $73.60 yearly, which is represented and included in the notes executed by said second party, described herein, and also the whole amount of taxes that are or may be assessed against said land.   The purchase price of said land is five hundred and sixty dollars, of which payment has been made of one hundred dollars at the execution of this contract.   The balance is to be paid without notice or demand therefor, in ten annual payments, at times specified in twenty certain promissory notes of even date herewith, signed by Augusta A. McKee, payable to the order of P. O. Cheney; one note being for forty-six dollars, due one year after date; one note being for forty-six dollars, due two years after date; one note being for forty-six dollars, due three years after date; and seven other notes for forty-six dollars each, due in four, five, six, seven, eight, nine, and ten years after date,—which ten are the principal notes; the other ten being the yearly interest, viz.: first note, $27.60; second note, $24.84; third note, $22.08; fourth note, $19.32; fifth note, $16.56; sixth note, $13.80; seventh note, $11.04; eighth note, $8.28; ninth note, $5.52; tenth note, $2.76,—due consecutively in one, two, three, four, five, six, seven, eight, nine, and ten years after date; all payable at the office of Russell & Holmes, Tecumseh, without interest before due, and with ten per cent. per annum after maturity.   And the said second party, in consideration of the premises, hereby agrees to make punctual payment of the above sums of principal and interest, as each of the same respectively becomes due, and will also seasonably and regularly pay all the taxes and assessments against said land.   In case the second party, her legal representatives or assigns, shall pay the several sums of money aforesaid, punctually and at times above limited, and shall strictly perform all and singular the agreements and stipulations aforesaid, after their true tenor and intent, then the said first party covenant and agree to make and execute unto the said second party,

her heirs or assigns, upon request and the surrender of this contract, a deed conveying said land in fee-simple, with the ordinary covenants of warranty; reserving and excepting the right of way that may be demanded for public use for railways or common roads. And it is hereby agreed and covenanted by the parties hereto that time and punctuality are material and essential ingredients in this contract. And in case the second party shall fail to pay the taxes, or if the land shall be sold for taxes, or if said second party shall fail to make the payments of money for principal or interest, or to make improvements as herein agreed, upon the terms and at the times herein limited, and to perform and complete all and each of the payments, agreements, and stipulations herein mentioned, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become null and void, and all the rights and interests hereby created or then existing in favor of the said second party or derived from her shall utterly cease and determine, and the right of possession and all equitable and legal interests in the premises hereby contracted shall revert to and revest in said first party without any declaration of forfeiture or any act of re-entry or any other act of said party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed. And in case of the forfeiture or annulling of this contract, the said second party shall still be bound and liable to pay all taxes then due or assessed against said land, also all installments of principal or interest that may then be due on this contract, to be regarded and considered as rent for the use of said land. Also no fixture or improvements, temporary or permanent, shall be removed from said land. And the said first party shall have the right, immediately upon failure of the second party to comply with the stipulation herein, to enter upon the land aforesaid, and take immediate possession thereof, together with all the fixtures, privileges, and appurtenances thereon or in anywise thereunto belonging or appertaining. And the said second party hereby covenants and agrees to surrender unto the said first party, or his order, or his assigns, the said land and appurtenances without delay or hinderance. And no court shall relieve the said second party from a failure to comply strictly and literally with this contract.

"It is further agreed and understood that whenever one-half of the purchase price mentioned shall be paid, with all accrued interest and taxes, the said first party shall execute the deed as herein contracted for, and take notes and a mortgage for the remaining payments, which shall run the unexpired time as herein fixed. No modification or change of this contract can be made except by entry hereon in writing, signed by both parties. An oversight or omission of the first party to take notice of any default of the second party shall not be deemed a waiver of their right so to do at any time, and it is further stipulated that no assignment of the premises or of this contract shall be valid, unless with the written consent of said first party, and by indorsement of the assignment hereon. Time is hereby declared by the parties hereto to be the essence of this contract, and a failure on the part of the second party to make the payments mentioned, to do and perform all the covenants, to comply with all the agreements herein expressed and by him agreed to be performed strictly according to the terms, boundaries, and limits of time herein mentioned, or either or any of them, fully and completely, shall immediately work a forfeiture of all the rights and interests and claims of the said party of the second part, in and to the lands herein mentioned, and every part thereof, together with all the crops thereon. And in case of forfeiture, the said second party binds himself and representatives to give up immediate possession of all said tract of land, whenever a demand is made therefor by the said party of the first part, or their legal representatives. And upon the non-performance of the covenants herein mentioned, or a failure to make the payments as herein specified, or any of them, at the time

promised, all the rights and privileges provided in this contract, given to said second party the right to purchase the land mentioned, shall immediately terminate, and hereafter his rights thereunder shall be the rights of a tenant, and he shall hold the land under this contract as a lease, and he shall be liable and subject as a tenant under the statute regulating the relations between landlord and tenant, and the first party may enforce the provisions of this contract, and also recover possession of the land, with all the fixtures, privileges, crops, and appurtenances thereon, as if the same was held by forcible detainer."

The defense is that by its terms time is made of the essence of the contract, and that complainant did not pay or offer to pay on the very day the note due in 1883 became due. The facts are these:

The contract was made on August 24, 1880. The four notes for principal and interest due in 1881 and 1882 were left at the bank of Russell & Holmes, the place of payment named in them; were paid, though not for a few days after they became due; and the money thus paid thereon was accepted by the defendant without objection or comment. The complainant testifies that about the time the 1883 notes became due he went two or three times to the bank with the money to pay them, but the notes were not there, and he did not leave the money with the bank. William Merril, a clerk of defendant, testifies that he came from Illinois with these notes, and on August 24th called at the bank for the money, and was told by the party in attendance that there was no money there with which to pay them, and thereupon he returned the notes to the defendant. The defendant testifies that immediately on the return of these notes, and on the twenty-seventh day of August, 1883, he wrote to the complainant notifying him that by reason of his default in payment the contract of sale was at an end, and that he held the purchase notes subject to complainant's order, and was ready to return them whenever he asked for them. The complainant testifies that he never received any such letter. On June 17, 1884, defendant wrote a letter to complainant inclosing the 16 unpaid purchase notes. In it he uses this language: "As you know, the contract of sale became null and void, was terminated and ended, by your failure to comply with its terms." On December 15, 1883, the complainant deposited in the bank the money for the notes due in August, 1883, notice of which was immediately given to the defendant, and also on August 12, 1884, he made a like deposit for the 1884 notes, and on August 15, 1885, for the 1885 notes. He also paid the taxes for 1881, 1882, 1883, and 1884. He has made about $400 worth of improvements on the land, a part though not a large part of which was made between August, 1883, and June, 1884.

Now, as I said, the defendant pleads that time is of the essence of this contract, and that complainant did not pay or offer to pay the 1883 notes on the day they became due, whereby he lost all rights of purchase. His counsel have filed an elaborate brief, citing and quoting from many authorities to show that courts both of equity and law respect and enforce those stipulations of a contract making time a matter of substance equally with other stipulations, and do not disregard or ignore them because of their severity and harshness. Courts do not make contracts for parties, but enforce the contracts as they make them. I agree with this as a statement of the general rule of law, and I had occasion in the case of *Railroad Co.* v. *Brickley*, 21 Kan. 275, to express at some length my own views, as well as those of that entire court, upon this question. But the question that

arises in this as in most cases of a kindred nature is whether the defendant has so conducted himself as to be entitled to insist on the enforcement of such a stringent stipulation. Sometimes it is equitable to enforce these stringent provisions as to time, and sometimes it is very inequitable; and it must be borne in mind that this action is pending in a court of equity. It was equitable in the case of *Railroad Co.* v. *Brickley, supra,* and in many of the cases cited by counsel, but it would be grossly inequitable in the case at bar. The defendant has already received nearly two-fifths of the purchase price of the land, and now, without offering to return a dollar, seeks to avoid the contract of sale, and recover the land, nearly doubled in value by the labor and money of the complainant. Four cases, in which this same defendant was party defendant, and in which was precisely the same kind of contract, and a similar effort on the part of the defendant, have been presented to the supreme court of this state, and in each of them by that able court the plaintiff was adjudged entitled to a decree. *Wagner* v. *Cheney,* 16 Neb. 202; S. C. 20 N. W. Rep. 222; *Robinson* v. *Cheney,* 17 Neb. 673; S. C. 24 N. W. Rep. 378; *Paulman* v. *Cheney,* 18 Neb. 392; S. C. 25 N. W. Rep. 495; *Ballard* v. *Cheney,* 26 N. W. Rep. 587.

This case and another between Damon and the same defendant were originally commenced in the state court, and by the defendant removed to this. And counsel, in their brief, advise me, by way of apology for its length and the number of citations, that they have several more cases pending in this court in which a similar question is presented and which may be affected by this decision. Of course these facts compel a careful examination. If there are many cases and many parties to be affected, it is specially important that the decision be in harmony with law and justice. And when a party, after repeated adverse decisions in the state tribunals, removes subsequent cases to the federal courts, there is at least an implied assertion that he, a non-resident, has not received a due consideration of his claims in the local forum. This is a court of equity. Equity takes no delight in a forfeiture. The claim of defendant is, as I have said, grossly inequitable; and if, in removing from a state to a federal court, he supposes he has come to a tribunal less keenly alive to the demands of equity and good conscience, he is greatly mistaken.

Where a contract is wholly executory there is little inequity in refusing specific performance to him who has either forgotten or neglected the exact hour. By his own laches he has simply lost the benefit of a good bargain. But where there has been, as in this case, part performance, and a forfeiture of all that has been paid and done is insisted upon, a court of equity instinctively turns to the party insisting upon the forfeiture, and inquires whether his conduct fails in the slightest degree. And in this it is not limited to the mere letter of the contract. There are often unwritten obligations which if disregarded justify a refusal of the claim of forfeiture. And the more in-

equitable the demand, the grosser the wrong in insisting upon a forfeiture; the more closely will a court scrutinize the conduct, and the smaller the departure from written or unwritten obligations which will be deemed sufficient to justify a refusal of the forfeiture. Now, the defendant left the first four notes with the bank, and accepted without objection or comment payment made a few days late. Such conduct would naturally lead the complainant to suppose that subsequently the bank would receive the notes, it being named as the place of payment, and that a few days' delay would not be seized upon as the basis of a claim of forfeiture. He might well be lured into the belief that he was dealing with an honorable man. Payment of the premium on the day is made a condition of keeping insurance policies alive. But not a few cases have arisen in which the courts have held that a habit of receiving payments a few days thereafter, or of giving notice to the insured in ample time, was sufficient to justify a refusal to enforce a forfeiture. I am aware that defendant claims that he has guarded against this by the clause he had put in the contract that a failure to insist upon forfeiture after one default should not prevent him from like insistence upon subsequent default. Perhaps this is technically true; at least I do not rest my judgment upon this alone, and yet it is worthy of notice. After the default had occurred, if defendant intended to insist upon a forfeiture, it was his imperative duty to return at once the unpaid purchase notes to complainant. Yet he held them for nearly a year. These were negotiable promissory notes, not yet due. Transferred to a *bona fide* holder, they became obligations which the maker could not avoid or defeat by evidence that the contract had been set aside even by mutual consent. It is true, as counsel for defendant claim in their brief, that nothing is said in the contract about returning the unpaid notes, and it is true that defendant testifies that he wrote to complainant that he could have them if he wanted. But the obligation to ask was not upon complainant; the duty to return was upon defendant. If he was not going to comply with his contract of sale, he had no right to retain that which was given for the purchase. He could not occupy a double and conflicting attitude. If he was going to be no longer a vendor, he must place the complainant beyond exposure to the obligations of a purchaser. When he fails to do this, and before return of the notes the money therefor is deposited in the place named for their payment, he has waived his right of forfeiture. It is true this is a mere technicality, and that often equity will consider that as done which ought to be done and which is in fact done before any injury has resulted. But it is no more a technicality than that which defendant is insisting upon, and it is a technicality in the interests of equity and fair dealing. It gives to the defendant the money which he contracted to sell his land for, principal and interest, and it secures to complainant the land which he has partially paid for and largely improved.

I hold, therefore, that defendant is estopped by his conduct from insisting upon a forfeiture, and that complainant is entitled to a decree as prayed for.

The case of *Damon* v. *Same Defendant* is substantially like this, and the same decree will be entered in it.