NORTH MISSOURI RAILROAD COMPANY, Plaintiff in Error, v. WINKLER, Defendant in Error.

1. Where a person subscribes to the stock of a railroad company upon condition that the road should "pass" through a certain county, and on a certain designated route, it is not a condition precedent to the right of the company to demand the amount subscribed that it should actually construct and complete the road along the line designated ; it is sufficient if the road be thus permanently located.

*Error to Macon Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Carr & Wells*, for plaintiff in error.

I. When the company had run the line of the road on the route indicated and permanently located it, it "passed" through the county on the route indicated within the meaning of the agreement. (Central Plank Road v. Clemens, 16 Mo. 359; Pacific Railroad v. Renshaw, 18 Mo. 210; Hannibal Plank Road Co. v. Menafee, 25 Mo. 547; Redfield on Railways, 74; McMillan v. Lexington and Marysville R. R. Co. 15 B. Monr. 218; State v. Collins, 6 Ohio, 61; 18 Mo. 562; 9 Watts, 458; 27 Penn. State, 261; Henderson and Nashville R. R. Co. v. Lavelle, 16 B. Monr. 358; 7 Ind. 407.)

*Gilstrap & Taylor*, for defendant in error.

I. The passing through of a permanent location is not the passing through of the road. Of what interest could it be to secure the location of the road at a particular place without reference to whether it would be built or not? The defendant intended to secure to himself the benefit of a railroad built and in operation.

EWING, Judge, delivered the opinion of the court.

This was an action by the North Missouri Railroad Company against the defendant to recover one share of stock which he had subscribed thereto. The petition alleges that "on the 23d of December, 1853, the defendant subscribed to the capital stock of said railroad company one share, amounting to one hundred dollars, by which he agreed to pay all calls upon said stock as the same should be made by order of the board of directors of said company, provided the road of said company passed through Macon county, on the dividing ridge which separated the waters of the Mississippi from the waters of the Missouri river, and on or near the route as it had been surveyed in range fourteen, in said county, pre-

vious to the defendant subscribing to the capital stock of said railroad company as aforesaid." The petition then avers that previous to the 22d December, 1855, the said company permanently located the route of the road through Macon county, on the dividing ridge which separates the waters of the Mississippi river from the waters of the Missouri river, and on or near the route, as it had been surveyed in range fourteen, in said county, previous to defendant's subscribing to the capital stock of said railroad company as aforesaid; and that by thus *permanently locating* said road as above stated, the condition on which the stock was subscribed was performed. It is then averred that the money remains unpaid. The petition was demurred to, and the demurrer having been sustained the cause is brought to this court by writ of error.

The question for our consideration involves the construction of the subscription paper, the terms of which are set out in the petition as above given, and whether the actual construction of the road was a condition precedent to the payment of the subscription.

We think the contract, by a fair and reasonable interpretation, means that when the road is permanently *located* the stock becomes payable, and that when this is done the company has done all that is necessary to give them a right to demand it. This view better accords with the sense which common usage has annexed to the terms of the instrument, with the object of the subscription, and the nature of the enterprise. The condition is that " the road passes through Macon county, on the dividing ridge" designated in the subscription paper ; and these terms are to be understood and interpreted according to the subject matter to which they relate. They are here used evidently to designate the place where the road shall run or where the route or line of the road is to pass, and are equivalent to the expression " provided the road runs or is located through Macon county." An example of the sense in which the words of the subscription are employed, is found in the charter of the company, where it speaks

of the road as passing through the lands of a certain class of persons. That the *location* of the road merely was what the parties had in view when fixing the condition of the subscription is still more palpable from a little further attention to the terms or phraseology employed to designate it, describing it with a degree of minuteness by reference to natural features of the country, which clearly show the *route* of the road to have been in the minds of the parties at the time.

But taking into consideration the objects of the subscription, the magnitude of the undertaking, and the circumstances that the parties must have had in view at the time, and interpreting the instrument with reference to these, we think no doubt can be entertained as to its real intent and meaning, or as to the sense in which it must have been understood by the parties. The stock subscribed was for the purpose of building the road, and was the means by which it was to be accomplished. For this purpose it must be payable as the work progresses, and it would be unreasonable to suppose that the company intended to deprive itself of the power to make the subscriptions available for the very object for which they were made, and whenever its necessities required. On the other hand, it would seem equally unreasonable that, if the subscribers intended to make the construction of the road a condition precedent to the payment of stock, they should have omitted the most obvious and appropriate words to express such intent; for there is nothing whatever said in the instrument about *constructing*, *building or completing* the road; nor is there any equivalent expression.

The case of McMillan v. Mays. & Lex. Railroad Co., 15 B. Monr. 234, is analagous to this, where the question involved was the construction of a paper similar to that under consideration. The suit was to recover ten shares of stock subscribed by the defendant with a promise " to pay fifty dollars on each share so subscribed in such instalments and at such times and places as may be required by the board of directors of said company, upon condition that said road shall be so located and constructed as to make the town of Carlisle a

point in said road; otherwise the subscription shall be null and void." The defence there was, as it is here, that the location and construction of the road were conditions precedent, and that both were to be performed before payment of the subscription could be required. But the court did not so decide. The construction of the road and payment of the stock were held to be concurrent acts, and that the entire construction of the road was not understood or intended by the parties to be a precedent condition to the payment of the stock. The proper interpretation of the undertaking, say the court, is, that the place and not the extent of the construction of the road, was evidently referred to in this stipulation. The stock was to be paid if the road was so constructed as to make the town of Carlisle a point, not when the construction of the road should be completed. If, in that case, the payment of stock and the construction of the road were concurrent acts, *a fortiori* they would seem to be in the case at bar, for in that the instrument mentioned expressly the construction of the road; in this, no such terms were used.

The judgment will be reversed and remanded; the other judges concurring.