THE MEMPHIS, KANSAS & COLORADO RAILWAY COMPANY v. JOHN W. THOMPSON, *as Mayor of the City of Parsons, et al.*

1. TIME, *of the Essence of the Contract; Municipal Bonds.* After proper preliminary petitition and election, the city of Parsons made a conditional subscription to the capital stock of the plaintiff. The proposition submitted to the voters, and upon which the subscription was based, contained, among other things, these two provisos: "*Provided further*, That no such bonds shall be issued until the said . . . railway company shall construct a road from the city of Parsons, Kansas, to the city of Cherokee, Kansas, according to the terms relating to the construction and equipment of said road, as stipulated in the contract, dated November 24th, 1877, and published in the Parsons *Eclipse*, November 29th, 1877, between the Memphis & Ellsworth Narrow-Gauge Railway Company and Greene, Bennett & Company, and agree to maintain and continue to operate said railway from the city of Cherokee, . . . to the road-bed of the Missouri, Kansas & Texas Railway, in said city of Parsons, and its depot established within thirty-five rods of the brick passenger depot of the last-named railway, in the city of Parsons: *Provided further*, That no such bonds shall be issued *at all*, unless the said Memphis, Kansas & Colorado Railway Company shall have its road constructed and in operation from the said city of Cherokee to said city of Parsons on or before the first day of July, 1878." *Held*, That by this latter proviso, time was made of the essence of the contract; and *held*, further, that by the two provisos, the company was bound to have its road completed according to the terms and specifications named in the first proviso, and in operation on or before the 1st day of July, 1878, in order to become entitled to the bonds of the city, and that unless its road was substantially so completed, the mere fact that a track was laid and trains run over it was not a compliance with the conditions of these provisos.

2. FACTS STATED, *No Waiver of Condition Precedent in the Contract.* The company claimed that its failure to have its road completed according to the contract specifications on or before the 1st of July, was owing to an unusual amount of wet weather in May and June, and an extraordinary rainfall in the latter month, which raised the river Neosho so as to overflow its banks and carry away a large amount of ties, timber and other material. *Held*, That as the parties to this contract have made time of its essence, and as the company has placed all of its materials and labor upon its own grounds and none upon those of the city, and has parted with nothing which the city has received, the facts stated do not waive the condition precedent, or authorize the courts to set aside the contract which the parties made and substitute another, which, perhaps, they might never have been willing to make.

*Original Proceedings in Mandamus.*

ON the 7th day of May, 1879, an alternative writ of man-
damus was issued out of this court, upon a petition filed
therefor on behalf of the *Memphis, Kansas & Colorado
Railway Company,* and directed to *John W. Thompson,* as
mayor of the city of Parsons, and *A. A. Osgood,* as clerk of
said city, commanding them, as such officers, immediately
upon the receipt of said writ, to issue and deliver to the
plaintiff thirty negotiable bonds of said city, each for $1,000,
payable in thirty years from July 1st, 1878, with interest at
the rate of eight per cent. per annum, payable annually, both
principal and interest payable at the fiscal agency of the
state of Kansas, in the city of New York—such bonds to be
in the usual form, with interest coupons attached, and cover-
ing the principal sum of $30,000, and to be issued in pay-
ment of the subscription of said city to a like amount of the
capital stock of the railway company aforesaid; or that the
said defendants show cause, etc. June 16, 1879, the defend-
ants answered, showing cause. Afterward, the case was tried
upon the pleadings and oral and written evidence. The
opinion herein was filed September 21, 1880.

*Ayres & Kimball,* for plaintiff.

*David Kelso, R. T. Holloway,* and *T. C. Cory,* for de-
fendants.

The opinion of the court was delivered by

BREWER, J.: This action was brought to compel the issue
of $30,000 in bonds of the city of Parsons, in payment of
the subscription of the city to a like amount of
the capital stock of the Memphis, Kansas &
Colorado Railway Company. The aid was voted and sub-
scription made under ch. 107, Laws of 1876, the provisions
of which, so far as material, are as follows:

"SECTION 1. Whenever . . . two-fifths of the resident
tax-payers of any incorporated city shall petition the mayor

and council of such city to submit to the qualified voters of such . . city a proposition to subscribe to the capital stock . . . of any railroad company constructing or proposing to construct a railroad through or into such . . . city, . . . the mayor and council, for such city, shall cause such an election to be held to determine whether such subscription . . . shall be made.

"SEC. 2. Before such subscription or loan shall be made, the question shall first be submitted to the qualified electors of such . . . city, as provided in § 1 of this act, at a special or general election, as the same shall be specified in the petition; which petition shall also designate the railroad company and the amount of stock proposed to be taken, . . . and the terms of payment, together with the conditions upon which it is proposed to make such subscription, . . . and the form of the ballots to be used at such election for and against such proposition.

"SEC. 3. The . . . mayor and council for such city, upon the presentation of the foregoing petition and such other conditions as may be deemed advisable by the authority ordering such election to . . . the mayor of the city shall convene and make an order which order shall embrace the terms and conditions set forth in the petition, and shall fix the time for holding said election, which shall be within sixty days from the day on which . . . the members of the council shall be convened.

"SEC. 4. Thirty days' notice of such election shall be given in some newspaper published or having a general circulation in such . . . city, and the election shall be held and the returns made and the result ascertained in the same manner as provided by law for general elections.

"SEC. 5. If two-thirds of the qualified electors voting at such election shall vote for such subscription, the mayor and council, for and on behalf of such city, shall order the . . . city clerk . . . to make such subscription or loan in the name of such . . . city; and shall cause such bonds, with coupons attached, as may be required by the terms of said proposition, to be issued in the name of such . . . city, which bonds . . . shall be signed by the mayor, and attested by the city clerk under the seal of said city: *Provided,* No such bonds shall be issued until the railroad to which the subscription . . . is proposed to be made shall be completed and in operation through the county, township or city voting such bonds, or to such point in such county, township

or city as may be specified in the proposition set forth in the petition required by the first section of this act."

"SEC. 8. Before any railroad company shall be entitled to receive any bonds issued in pursuance of the foregoing provisions for the stock of such company, said company shall deliver to the treasurer of such . . . city, stock in their said road, equal in amount with the bonds authorized to be issued, dollar for dollar."

The plaintiff was incorporated November 26, 1877. On the 14th of December, 1877, a petition was presented to the mayor and council of the city, the terms and conditions of which are embraced in the order hereafter referred to, excepting the second proviso of the petition, which is as follows:

"*Provided further*, That no such bonds shall be issued until the said . . . railway shall be constructed and in operation from the city of Cherokee . . . to the road-bed of the Missouri, Kansas & Texas Railway, in the city of Parsons, and its depot established within thirty-five rods of the brick passenger depot of the last-mentioned railway, in said city of Parsons."

On the 19th of December, 1877, after examining the petition and finding it sufficient as to numbers and qualifications of petitioners, etc., the mayor and council made an order calling an election, which, so far as material, is as follows:

"Whereas, on the 14th day of December, 1878, a petition was presented to the mayor and councilmen of the city of Parsons, . . . signed by more than two-fifths of the resident tax-payers . . . of said city, asking that the mayor and council aforesaid cause an election to be held to submit . . . the proposition to subscribe thirty thousand dollars to the capital stock of the Memphis, Kansas & Colorado Railway Company, such stock to be paid for by the bonds of said city of Parsons, in equal amounts, dollar for dollar, which bonds are to draw interest at the rate of 8 per cent. per annum from their date, and be payable in thirty years: *Provided*, etc. . . . *Provided further*, That no such bonds shall be issued until the said railway company shall construct a road from the city of Parsons, Kansas, to the city of Cherokee, Kansas, according to the terms relating to the construction and equipment of said road as stipulated in the contract, dated November 24th, 1877, and published

in the Parsons *Eclipse*, November 29th, 1877, between the Memphis & Ellsworth Narrow-Gauge Railway Company, and Greene, Bennett & Company, and agree to maintain and continue to operate said railway from the city of Cherokee . . . to the road-bed of the Missouri, Kansas & Texas Railway, in said city of Parsons, and its depot established within thirty-five rods of the brick passenger depot of the last-named railway, in the city of Parsons: *Provided further*, That no such bonds shall be issued at all, unless the said Memphis, Kansas & Colorado Railway Company shall have its road constructed and in operation from the said city of Cherokee to the said city of Parsons on or before the first day of July, 1878.

"It shall be the duty of the mayor and clerk, so soon as the said railway company shall have constructed its road and commenced running its cars from said city of Cherokee to said city of Parsons, to issue said bonds in the said sum of thirty thousand dollars . . . and deliver them to said . . . railway company in exchange for a like amount of stock of said company. Now, therefore," etc. [Here follows the order calling a special election for the purpose indicated, and prescribing the form of ballots, etc., duly signed, sealed and attested.]

It will be noticed that the order differs from the petition in this, that instead of leaving the manner of construction and extent of equipment an open question, it distinctly provides how the road shall be constructed and equipped.

Notice of the election was given as prescribed by statute. The election was held January 29, 1878, the day named in the order, and more than two-thirds of the votes polled were in favor of the proposition.

On the first of February, the mayor and council met and canvassed the vote, declared the result as stated, and at the regular session held on the 11th of the same month, passed a resolution reciting the steps that had been taken, etc., and proceeding as follows:

" . . . *And whereas*, All of said proceedings, including the making of said petition, its presentation, and the order for said election made thereon, notice by publication of said election, the manner in which said election was held,

the returns made, and the result ascertained, have been in strict conformity with law: now, therefore, be it

"*Resolved*, That the city clerk of this city, in the name and in behalf of the city of Parsons, subscribe thirty thousand. dollars to the capital stock of the Memphis, Kansas & Colorado railway; such subscription to be made and stock paid for in the manner and subject to the conditions and restrictions set out at large in the body of the proposition submitted at the election aforesaid," etc.

On the 22d day of the same month, the city clerk, in behalf of the city, subscribed upon the books of the railway company for the stock as directed in the resolution. The subscription, after referring to the authority under which it was made, and setting forth at length the resolution of the council last referred to, proceeded as follows:

"Now, therefore, I, E. S. Stevens, city clerk of the city of Parsons, . . . in the name and for and in behalf of said city, do hereby subscribe to and for thirty thousand dollars of the capital stock of the Memphis, Kansas & Colorado Railway Company, to be issued and delivered to the treasurer of the city, . . . and to be paid for by the bonds of said city, to be issued in the manner prescribed by law, and subject to the conditions, restrictions and limitations in the proposition hereinbefore referred to. In witness whereof," etc., [signed by the clerk, and seal of city attached.]

The material portions of the contract referred to in the proposition are as follows:

"That said parties of the second part, for and in consideration, etc., do hereby covenant and agree that they will construct, etc., in a good, workmanlike and substantial manner, a railroad from, etc., and complete, equip and put said road in operation according to the following specifications:

"The road-bed to have at least twenty-six hundred and forty ties per mile—ties to be of sufficient size and strength to enable the road to be operated in safety, and to be of such timber as the country affords. The iron for the rails to be of good quality, weighing not less than thirty pounds to the yard, Fish-plate joints; the bridges to be all constructed in a good and substantial manner; the bridge over the Neosho river to be Howe truss, not less than one hundred feet span, with proper approaches, the maximum grade, etc., not to exceed sixty feet to the mile, etc. The equipment of the first section of the

road from Brownsville [now Messer,] to the city of Parsons, to consist of not less than two locomotives, weighing not less than twelve tons each; one first-class passenger coach; one combination car, built to accommodate passengers, mail and baggage; one caboose car, ten box cars, thirty flat and coal cars, four hand cars, one iron car, and such other equipments as may be necessary to keep the road in good repair and do the business of the road with reasonable promptness. Said parties of the second part also agree to build on said first section of road between the points named above, at least two water tanks, one of which shall be located at or near the crossing of the Labette creek, near Parsons, and the other where it will be most convenient for service in working the road. And they further agree to build a suitable freight and passenger depot, on block 50, in the city of Parsons, with a spur track leading thereto, and the same at the city of Cherokee, conveniently located to the business of the town. Suitable depots are to be constructed at such other points on the line of the road as the company may determine upon. Said parties of the second part further agree to construct a 'Y' or turn-table, at the city of Parsons."

Plaintiff having constructed its road between Cherokee and Parsons, and having daily trains running between these cities, applied for the bonds, but the city refused to issue them, claiming that the conditions upon which the subscription was made had not been complied with. Thereupon this action was commenced in this court. The case has been tried, a large amount of testimony introduced, and the questions in issue have been fully and ably discussed by counsel.

We think the pivotal question arises on the third proviso in the petition and order for the election. These provisos, of course, enter into and form the terms of the contract between the parties. The language was chosen by them to express their mutual intent, and such construction must be given thereto as will carry into effect that mutual understanding. The province of the court is interpretation. We are to ascertain what the parties understood and intended by this language, and may not deviate therefrom, whether that contract as so interpreted be wise or unwise for either party. Unfortunately, the proviso is susceptible of two interpreta-

tions, in support of either of which much may be said. The proviso is, "that the company shall have its road constructed and in operation . . . on or before the first day of July, 1878." The proviso immediately preceding required that the road be constructed in a certain manner and in accordance with certain specifications. Now, does this proviso require that the road be by July 1st completed as so specified, or simply that it be so far constructed as to be then in operation, leaving full compliance with the specifications to be made thereafter? That this is a pivotal question, is clear, for that the track was laid, that a train ran over it on the 1st of July, and that trains have been run over it daily since, is not disputed; while on the other hand, even the plaintiff does not claim that the road was then in the condition required by the second proviso. We quote from the brief of counsel, which states the case for the plaintiff fully as strongly as the testimony will warrant: "From Cherokee to the Neosho river, a distance of seventeen miles, the road was substantially finished; it was fully tied, spiked, ballasted, and the track in fair condition for a new road; from that point to Parsons, a distance of nine miles, it was unfinished; it was not fully tied and spiked; the bridge over the Neosho river was incomplete; the embankments and cuts were narrow, and the track rough." In support of the view that only such a construction as sufficed for operating the road was contemplated in the third proviso, it is argued that the purpose and idea of stock subscriptions is to secure funds with which to do the work of the corporation; that this subscription was made under the authority of an act entitled "An act to aid in the construction of railroads;" that parties must be understood to have contracted with reference to these facts, and to have intended to provide means pending and to assist in the work, and not simply to secure a bonus after all was finished; that such construction must prevail as will promote the object in view, viz., the securing of railroad facilities to the city and of aid to the company; that each proviso is separate and independent; that they were inserted, or rather placed, in

their present form at different times, and that words and phrases used in them may therefore very naturally have been used at such different times in different senses; that the union of the words "constructed and in operation" suggests and defines the meaning intended for the word "constructed" as such a construction as will enable the company to operate the road; and further, that the word "so" would naturally have been used, and the proviso made to read, "so constructed and in operation," if the same extent of construction had been contemplated in the third as in the second proviso. In support of these views, the following authorities are cited: *Railroad Company v. Smith*, 15 Ohio St. 328; *Chamberlain v. Railroad Co.*, 15 Ohio St. 225; *Warner v. Callender*, 20 Ohio St. 197; *Railroad Co. v. Brooks*, 60 Me. 568; *Railroad Co. v. Sherman*, 8 R. I. 564; *Swartwout v. Railroad Co.*, 24 Mich. 389; *McMillan v. Railroad Co.*, 15 B. Mon. 218; *Miller v. Railroad Co.*, 40 Pa. St. 237; *Railroad Co. v. Winkler*, 29 Mo. 318.

In *Chamberlain v. Rld. Co.*, supra, the subscriber promised to pay, provided the road was permanently located through the village, etc., and a freight-house erected within a distance named; *held*, that the location of the road was the only condition precedent to the subscription becoming absolute, and that the building of the road, freight-house, etc., were stipulations merely, which the company undertook to perform at the appropriate time.

In the cases of *Miller v. Rld. Co.*, and *McMillan v. Rld. Co.*, supra, the subscriptions were conditional upon the road being "located and constructed" upon a certain route; *held*, that they were payable upon permanent location, and that construction was not a condition precedent.

In *Woonsocket Union Railroad Company v. Sherman*, supra, the subscription was conditioned to be payable "if the road was built through the village of P.;" *held*, payable when the road was located, though not built.

So in *Swartwout v. Railroad Company*, supra, the subscription was "upon condition that the road should be located and

built within one mile," etc.; *held*, payable when the road was permanently located, though not built. Judge Cooley, in delivering the opinion of the court, said: "Had it been their understanding that the sums subscribed were not to be available to the company for the purposes of construction of its road, but payable only when the road was wholly completed, it is only reasonable to infer that they would have expressed their intent more clearly, and would have indicated, with definiteness, what stage the work should reach before their liability should become fixed."

On the other hand, it is claimed that the two provisos are to be construed together, the one defining the manner, and the other the time of construction; the one declaring that the road should be constructed in accordance with certain specifications, and the other at a certain time, and that if the parties intended a different manner of construction and extent of completion in the latter proviso, such intent would have been differently and clearly expressed; that the ordinary rule of construction is, that where a matter is referred to in several places in one contract, it is to be taken in the same sense; that the railroad company soliciting this subscription should have seen that the contract was made more specific if it intended that the language should mean one thing in one proviso and a different thing in another; that while the act is entitled and the purpose of the subscription was to aid in the construction of railroads, yet the legislature, aware that many municipalities had issued bonds without obtaining the expected road, in terms provided that "No such bonds shall be issued until the railroad to which the subscription or loan is proposed to be made shall be *completed* and in operation through the county, township or city voting such bonds, or to such point in such county, township or city as may be specified in the proposition set forth in the petition required in the first section of this act." (Sec. 5, cited, *supra.*) In other words, as one protection to the municipality, the legislature has ordered that a part of the road must be completed and in operation before any public aid can be given. Private

capital must be invested and a railroad exist before the municipality parts with anything. The public may pay for a road already built, or assist in extending one actually completed and in operation for a certain distance; but its promises cannot be appropriated in anticipation of a road, or in aid of one only partially constructed, as in the cases cited by counsel. Those decisions compelled this precautionary legislation. And the extent of the road to be completed is known to the voter before the election. Upon the basis of such a law, the parties contracted. Suppose they had simply specified the distance which the road must be completed, as provided in the statute: the mere fact that rails were laid and a train brought over them would not be conclusive that the company was entitled to the bonds. Certain facts as to grades, cuts, embankments, ties, spikes, etc., must also be shown before it can be held that a railroad has been constructed. The road must be placed in such condition as to furnish a safe, speedy, certain, easy and continuing means of travel and transportation of goods. (*Parsons v. Tilden*, 59 N. Y. 639.) Supposing the parties had gone further, and added a second and separate proviso, commencing as do the provisos in this contract, that the road should be constructed in accordance with certain specifications: could there be any question but that the road must be completed according to these specifications before it could be said to be so constructed as to entitle the company to the bonds? Would it not be conceded that the parties had named these specifications to avoid question as to how much work must be done before any claim was made for the bonds? In this contract, the parties have gone but a single step further, and, specifying the distance and manner of construction, have added a proviso as to time. Are not all to be construed together? The entire matter was not expressed in one proviso, but separated into two, in order to make emphatic and clear the fact that time was to be of the essence of the contract. "*Provided further,* That no such bonds shall be issued *at all,* unless," etc. In no other way could this be made clearer and more emphatic.

Opinion of the Court.

We agree with the views of this contract entertained by the city. It seems to us that the parties having stipulated for construction in a certain manner, and in accordance with certain specifications, meant, when they added a proviso as to time, to refer to the manner of construction already provided for. That would be the rule of construction in any ordinary contract between individuals. A word or a phrase once used in a contract and defined, carries the same meaning all through the contract. If anything different is thereafter intended by it, the difference is plainly indicated. *A fortiori*, should such rule of construction obtain in this contract. While this may not be considered a public grant, and covered by the rule that nothing is granted which is not plainly named, yet it takes something of that nature and is partially, at least, subject to the same rule. It is taking something away from the public at the instance and solicitation of the individual. The reasons which compel the construction of a public grant against the grantee exist in cases like this. The moving party is the railroad. It seeks public aid. It prepares the contract; and if there be anything doubtful or obscure in its terms, the construction should be against it rather than against the public. It would seem that the proposition as prepared and presented was not satisfactory to the city authorities. It seemed to leave the manner and extent of performance by the company an open question, and they introduced the stipulation as to specifications to guard against any incomplete or doubtful performance by the railroad company. The company was under no obligation to accept the subscription as tendered with the conditions annexed. Having accepted it, it must abide by them.

Indeed, if the specifications as to the manner of construction had not been inserted, it is not clear that it could fairly be said that on the 1st of July the road was so "completed," using the language of the statute, as to be a compliance with the condition as to time. True, trains were run upon that day, and have continued to run ever since, but the road was

<small>1. Time, of the essence of the contract: municipal bonds.</small>

in far from good working order.   West of the Neosho it was
very incomplete.   We have quoted the language of the plain-
tiff, expressing its view of the condition of the road.   The
testimony, going into detail, shows a track unfit for use,
and one which required weeks of labor to place it in a rea-
sonably good condition.   But we do not propose to discuss
this question, or consider how the case would have stood if
no stipulation as to specifications had been inserted.   View-
ing the contract as one which required performance in a spec-
ified manner by a named time, and it being conceded as well
as proved that such performance was not made by that time,
we hold that the company did not comply with the condi-
tions of the contract.

Passing this point, counsel for the plaintiff assert that, if
the contract means that which we hold it to mean, the act
of God alone prevented full compliance by the railroad com-
pany, and that therefore it is now, having constructed the
road according to the contract stipulations, entitled to the
bonds.   It is not responsible for any delay caused by matters
over which it has no control.   The great rains, the conse-
quent floods, alone prevented it from doing exactly that
which it contracted to do, and these, being the act of God,
excuse its non-performance.   Authorities have been cited
showing that in certain cases equity will relieve against a
forfeiture, and also that where there has been a part perform-
ance by one party and the other has accepted the benefits of
such performance, the latter will be compelled to pay accord-
ing to the contract, with such abatement for damages result-
ing from failure of full performance as may be just.   But
we do not think these authorities are in point.   There is no
question of forfeiture.   The company has paid nothing to
the city which the latter is seeking to retain.   The company
has parted with nothing.   It owns all it ever owned.   The
city is seeking to take nothing from the company, nor is it
claiming any forfeiture at its hands.   It simply says that the
conditions upon which it promised to aid the company have
not been comlied with, and therefore it is not bound to

furnish any aid. The parties inserted in their contract a condition precedent. Unless that condition was complied with, the city is not bound. The contract was executory. The city agreed to take certain stock and pay for it with its bonds on a specified condition. That condition was not complied with. May the courts now compel the city to take and pay for the stock? If so, they hold the city to a contract it never made, and one which if proposed to it in the first instance, it might have refused to make. (*Jones v. United States*, 96 U. S. 24; *Phillips, &c., v. Seymore,* 91 U. S. 650.) Nor is this a case of part performance by one party and the acceptance by the other of the proceeds of such performance. The work done by the company was upon its own grounds. It owns the road absolutely and entirely. It has parted with nothing which the city has received. The city has accepted and appropriated none of its labor and none of its materials. It has received the benefit of the work in no other sense than every individual in the community, and in no other way than that of one person receiving benefit from his neighbor's improvement of his own property. It does not parallel at all the case of a party contracting to build for another a house upon the latter's land, by a certain day, and only partially doing the work by that day. The partially-built house belongs to the latter. He appropriates the labor and materials of the former. But here the company has parted with nothing and the city has taken and owns nothing. And in such a case the condition must be performed or the contract does not bind the city. Nothing excuses such non-performance. Both parties stand released. See the following authorities: *Jones v. United States*, 96 U. S. 24; *Phillips, &c., v. Seymore*, 91 U. S. 650; *Oakley v. Morton,* 11 N.Y. 25; *Howell v. K. Ins. Co.*, 44 N. Y. 284; *Wells v. Smith,* 2 Edw. Ch. 78; 4 Kent's Com. 125; *Mizell v. Burnett*, 4 Jones (N. C.) L. 249; *V. & T. Rld. Co. v. Comm'rs of Lyon Co.*, 6 Nev. 68.

This last case is in many respects very instructive. It appears that the legislature passed a law authorizing and direct-

<div style="margin-left:2em">2. Facts stated, no waiver of condition precedent in the contract.</div>

ing the defendant to issue $75,000 of its bonds to the plaintiff when the latter should have completed a railroad from Virginia City to Carson City, and passing a point not more than 1,200 feet west of Trench's mill, in Silver City. The road was built within the specified time, but the main line did not run nearer to the mill than 2,400 feet. Within the same time a branch was built running to within 300 or 400 feet of the mill. It was held that the condition precedent was not complied with, and therefore the defendant was not bound; and this, although it was proved that the road as built was of more benefit to Lyon county than if built as specified in the law. The court held that this legislative contract was to be construed like any ordinary contract between individuals. It contained a condition precedent, and unless that was substantially complied with, no liability attached. The court would not attempt to make a new contract for the parties, even though it could make a better one for the defendant. In Story on Contracts, § 32, it is said that a condition precedent "must be strictly performed in every particular, in order to entitle the party whose duty it is to perform it to enforce the contract against the other party." (1 Redfield on Railways, 5th ed., p. 71, § 3.)

This very contract contains another condition precedent, that named in the second proviso. Until the terms of that condition were complied with, no one would contend that the city was bound to issue its bonds, no matter what causes produced the delay. The third proviso is as vital as the second. It differs in this, that it makes time of the essence of the contract; but it is equally and no more a condition precedent. Parties may stipulate to make time of the essence of the contract. (*M. R. Ft. S. & G. Rld. Co. v. Brickley,* 21 Kas. 275.) A condition precedent is not less binding because it contains a time stipulation, nor have the courts any greater power to set it aside. In any aspect, then, of the conceded facts, it seems to us that under the contract the city is not liable.

We might close this opinion here, but it is due to the city to say that it contends that, notwithstanding the rains and

high water during the month of June, there was ample time for the plaintiff to have completed its contract before the 1st of July; and further, that it has never yet completed the road according to the specifications. After the commencement of this action, the city caused a careful survey to be made by a competent engineer, who took down on paper as he went along the results of his survey and measurement. Such survey disclosed defects like these: in one mile of the track west of the Neosho river, out of 2,717 ties, 415 were entirely unspiked; in the next, out of 2,902, 812 were unspiked; in another, 767 out of 2,810; in a fourth, 463 out of 2,764; and in a fifth, 952 out of 2,907.

While the contract required that the maximum grade should not exceed sixty feet to the mile, out of ten places measured, eight exceeded that grade, as follows: one, $69\frac{17}{100}$ feet; a second, $66\frac{42}{100}$; a third, $72\frac{86}{100}$; a fourth, $74\frac{34}{100}$; a fifth, $68\frac{64}{100}$; a sixth, $80\frac{78}{100}$; a seventh, $67\frac{53}{100}$; and the eighth, $66\frac{3}{100}$ feet. These measurements were made at different places along the line, and in distances of from 300 to 800 feet.

Other similar defects were noticed in the embankments, cuts, bridges, etc. Whether these defects are such that the courts would be compelled to hold that the specifications have never yet been substantially complied with, we need not stop to determine. We notice them only to show the view which the city holds of the plaintiff's conduct in the premises, and its claimed performance of the contract.

We have given to this case full and patient investigation, and are compelled to hold that the plaintiff failed to comply with the conditions upon which alone the city contracted to issue its bonds.

Judgment must therefore be entered in favor of the defendant.

All the Justices concurring.